WATERFORD SCHOOL DISTRICT v STATE BOARD OF
EDUCATION

Docket No. 51344. Submitted July 9, 1980, at Detroit.—Decided July
18, 1980. Leave to appeal denied, 409 Mich 934.

The State Board of Education and the State Treasurer reduced
the amount of state aid for education to the Waterford School
District for the fiscal year 1979-1980, pursuant to a 1979
statutory school aid formula. The Waterford School District
and its individual school board members, each in their capacity
as school board members and as taxpayers, brought an action
for a declaratory judgment, an injunction and mandamus
against the State Board of Education and the State Treasurer,
alleging that the defendants were prohibited by the so-called
Headlee Amendment to the Michigan Constitution from reduc-
ing the ratio of state aid to schools from that proportion in
existence in the fiscal year 1978-79. The Oakland Circuit Court,
Steven N. Andrews, J., granted accelerated judgment in favor
of the defendants, holding that the Court of Appeals had
exclusive jurisdiction of both a taxpayer's suit and an action for
mandamus against a state officer. Plaintiffs appeal. *Held:*

1. A taxpayer has standing to bring an action based upon the
Headlee Amendment. Jurisdiction over such a matter is concur-
rent in both the Court of Appeals and the circuit court.

2. Circuit courts also have jurisdiction to entertain a manda-
mus action against state officers, despite the court rule to the
contrary.

3. The school district and the individual board members have
standing to bring an action for recovery of state funds which
allegedly were wrongfully denied.

Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur 2d (Rev), Constitutional Law § 85.
[2] 59 Am Jur 2d, Parties § 26.
[3] 74 Am Jur 2d, Taxpayers' Actions § 7.
[4, 5] 20 Am Jur 2d, Courts §§ 28, 106, 128.
[6] 52 Am Jur 2d, Mandamus § 26.
[7] 68 Am Jur 2d, Schools § 16.

1. CONSTITUTIONAL LAW — CONSTRUCTION — CONSIDERATIONS IN INTERPRETATION.

The primary rule for the construction of constitutional provisions is that of "common understanding", giving an interpretation which would be arrived at by reasonable minds; the circumstances surrounding the adoption of a constitutional provision and the purpose sought to be accomplished may be considered, and it is to be presumed that the drafters of a provision were aware of existing laws and court decisions and drafted the provision accordingly.

2. WORDS AND PHRASES — STANDING.

"Standing" denotes the existence of a party's interest in the outcome of litigation; an interest that will assure sincere and vigorous advocacy.

3. TAXATION — EXPENDITURE OF STATE FUNDS — TAXPAYER'S SUIT — CONSTITUTIONAL LAW — STATUTES.

A taxpayer may bring an action to prevent the illegal expenditure of state funds or to test the constitutionality of a related statute (Const 1963, art 9, § 32, MCL 600.2041[3]; MSA 27A.2041[3]).

4. COURTS — JURISDICTION — TAXATION — CONSTITUTIONAL LAW — STATUTES.

Circuit courts have concurrent jurisdiction with the Court of Appeals over actions brought to enforce the provisions of the so-called "Headlee" tax limitation amendment of the constitution (Const 1963, art 9, § 32, MCL 600.605; MSA 27A.605).

5. COURTS — CIRCUIT COURTS — JURISDICTION — CONSTITUTIONAL LAW — STATUTES.

Circuit courts are presumed to have jurisdiction over a matter absent a specific exclusion provided by law (Const 1963, art 6, § 13, MCL 600.601; MSA 27A.601).

6. MANDAMUS — STATE OFFICERS — COURTS — JURISDICTION — STATUTES — COURT RULES.

The jurisdictional provisions of the Revised Judicature Act control over the conflicting provisions of a court rule regarding actions for mandamus against state officers; the circuit courts and the Court of Appeals have concurrent jurisdiction over such action (MCL 600.4401[1]; MSA 27A.4401[1], GCR 1963, 714.1[1]).

7. Schools — School Boards — Standing — Constitutional Law
    — State Funds.

 A local school district and its individual school board members
 have standing to attack a statute as being violative of the state
 constitution where the issue is whether the school district is
 being deprived of state funds in violation of the constitution.

*Bruce T. Leitman* and *William G. Wolfram,* for
plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Gerald F.
Young, James E. Riley,* and *Andrew D. Quinn,*
Assistants Attorney General, for defendants.

Before: J. H. Gillis, P.J., and N. J. Kaufman
and R. M. Maher, JJ.

J. H. Gillis, P.J. Plaintiffs appeal from a deci-
sion of the Oakland County Circuit Court granting
accelerated judgment to defendants.

This litigation is the result of a reduction in
state funding to the Waterford School District.
Defendants, pursuant to the school aid formula
found in 1979 PA 94, § 21(1); MCL 388.1621(1);
MSA 15.1919(921)(1), reduced the state aid for
education to the school district from the $663.60
per pupil provided in fiscal 1978-79 to $613.01 per
pupil for fiscal 1979-80. Plaintiffs allege that this
violated both the Headlee Amendment to the
Michigan Constitution, Const 1963, art 9, §§ 25-34,[1]

---

[1] The Headlee Amendment was proposed by an initiative petition
and ratified on November 7, 1978, with an effective date of December
22, 1978. It reads in part:

"Property taxes and other local taxes and state taxation and
spending may not be increased above the limitations specified herein
without direct voter approval. The state is prohibited from requiring
any new or expanded activities by local governments without full
state financing, from reducing the proportion of state spending in the
form of aid to local governments, or from shifting the tax burden to
local government. A provision for emergency conditions is established

and MCL 21.242; MSA 5.3194(612).[2] The named plaintiffs are the Waterford School District and seven individuals, each in their capacity as members of the Waterford School Board and as individual taxpayers.

In granting the accelerated judgment, the lower court ruled that the Court of Appeals had exclusive jurisdiction to hear cases involving alleged violations of the Headlee Amendment as well as exclusive jurisdiction to issue mandamus against a state officer.

The lower court's belief that it lacked jurisdiction to hear cases arising under the Headlee Amendment was based on its interpretation of Const 1963, art 9, § 32. Section 32 reads:

"Any taxpayer of the state shall have standing to bring suit in the Michigan State Court of Appeals to enforce the provisions of Sections 25 through 31, inclusive, of this Article and, if the suit is sustained, shall receive from the applicable unit of government his costs incurred in maintaining such suit."

---

and the repayment of voter approved bonded indebtedness is guaranteed. Implementation of this section is specified in Sections 26 through 34, inclusive, of this Article.

\* \* \*

"The state is hereby prohibited from reducing the state financed proportion or the necessary costs of any existing activity or service required of units of Local Government by state law. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs. The provision of this section shall not apply to costs incurred pursuant to Article VI, Section 18." Const 1963, art 9, §§ 25, 29.

[2] 1979 PA 101, § 12; MCL 21.242; MSA 5.3194(612), effective date August 3, 1979, reads:

"A state law shall not be enacted, which causes a reduction in the state financed proportion of the necessary costs of an existing activity or service required of local units of government by existing law, unless the existing law requiring an activity or service is repealed."

The primary rule for the construction of constitutional provisions is that of "common understanding". The interpretation that should be given is that which reasonable minds, the great mass of people, would arrive at. A second rule is that to clarify meaning, the circumstances surrounding the adoption of a constitutional provision and the purpose sought to be accomplished may be considered. *Traverse City School Dist v Attorney General,* 384 Mich 390, 405; 185 NW2d 9 (1971). Moreover, the framers of a provision must be presumed to have been aware of existing laws and court decisions and to have drafted accordingly. *Saginaw City Council v Saginaw Policemen & Firemen Retirement System Trustees,* 321 Mich 641, 647; 32 NW2d 899 (1948).

The plain language of § 32 indicates an intent to provide standing to taxpayers to enforce the substantive provisions of the amendment. Standing is the legal term used to denote the existence of a party's interest in the outcome of a litigation; an interest that will assure sincere and vigorous advocacy. *Michigan License Beverage Ass'n v Behnan Hall, Inc,* 82 Mich App 319, 324; 266 NW2d 808 (1978). Traditionally, a private citizen has no standing to vindicate a public wrong or enforce a public right where he is not hurt in any manner differently than the citizenry at large. See, *e.g., Inglis v Public School Employees Retirement Board,* 374 Mich 10; 131 NW2d 54 (1964). Therefore, a taxpayer has no standing to challenge the expenditure of public funds where the threatened injury to him is no different than that to taxpayers generally. *Massachusetts v Mellon,* 262 US 447; 43 S Ct 597; 67 L Ed 1078 (1923), *Hertel v Racing Comm'r,* 68 Mich App 191; 242 NW2d 526 (1976).

In Michigan, the common-law bar on taxpayer

suits has been relaxed by statute. The Revised Judicature Act permits litigation to prevent the illegal expenditure of state funds or to test the constitutionality of a related statute "in the names of at least 5 residents of this state who own property assessed for direct taxation by the county wherein they reside". MCL 600.2041(3); MSA 27A.2041(3). The taxpayers must demonstrate that they will sustain substantial injury or suffer loss or damage as taxpayers, through increased taxation and the consequences thereof. *Menendez v Detroit,* 337 Mich 476, 482; 60 NW2d 319 (1953), *Jones v Racing Comm'r,* 56 Mich App 65, 68; 223 NW2d 367 (1974). A taxpayer lacks standing unless these requirements are met.

It is apparent that § 32 was intended to further ease the limitations on taxpayer suits. The Headlee Amendment grew out of the spirit of "tax revolt" and was designed to place specific limitations on state and local revenues. The ultimate purpose was to place public spending under direct popular control. Drafters' Notes—Tax Limitation Amendment, pp 2-4 (Taxpayers United Research Institute, February 15, 1979). One aspect of popular control involves litigation to force compliance with the constitutional provisions. Section 32 facilitates control by permitting a single taxpayer to bring suit in this Court. In the present case, standing is provided both by § 32 and MCL 600.2041; MSA 27A.2041.

The amendment has only minimal impact on subject-matter jurisdiction. While a single taxpayer is provided standing to bring suit in the Court of Appeals to enforce the provisions of Const 1963, art 9, §§ 25-31, there is no indication that this Court is to have exclusive jurisdiction over all litigation that involves the amendment. Absent a

specific grant of exclusivity, we must conclude that where standing is otherwise present, the circuit courts have concurrent jurisdiction over suits based on the Headlee Amendment.

The circuit courts are courts of general jurisdiction, provided with original jurisdiction over all matters not prohibited by law. Const 1963, art 6, § 13. The Revised Judicature Act provides, at MCL 600.605; MSA 27A.605:

"Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state."

See *Lester v Sheriff of Oakland County,* 84 Mich App 689, 694-695; 270 NW2d 493 (1978). Since there is no grant of exclusivity, the general provisions of the Constitution and Revised Judicature Act must govern, and subject-matter jurisdiction be found to lie in the circuit courts.[3]

We also conclude that the circuit courts have concurrent jurisdiction to entertain mandamus actions against state officers. Prior to January 1, 1977, the effective date of 1976 PA 317, § 4401 of the Revised Judicature Act limited mandamus jurisdiction over state officers to the Court of Appeals. However, this section has since been amended to provide:

"An action for mandamus against a state officer shall be commenced in the court of appeals, or in the circuit court in the county in which venue is proper or in

---

[3] Subsequent to the institution of this suit, the Legislature provided an affirmative basis for jurisdiction within the circuit courts. 1980 PA 110; MCL 600.308a; MSA 27A.308(1).

Ingham county, at the option of the party commencing the action." MCL 600.4401(1); MSA 27A.4401(1).

The amendment not only removed the prior grant of exclusivity, but affirmatively provided the circuit courts with jurisdiction over these actions. *Saginaw Valley Trotting Ass'n, Inc v Michigan Racing Comm'r,* 84 Mich App 564, 568; 269 NW2d 676 (1978), *Schweitzer v Board of Forensic Polygraph Examiners,* 77 Mich App 749, 753, fn 5; 259 NW2d 362 (1977). Nonetheless, the trial court reasoned that mandamus jurisdiction is still limited by GCR 1963, 714.1(1).[4] Despite the revision of MCL 600.4401(1); MSA 27A.4401(1), the Supreme Court has not altered the corresponding court rule. The trial judge interpreted this as an indication that the Supreme Court intends to control mandamus jurisdiction and to prevent circuit courts from entertaining such actions with regard to state officers. See 4 Honigman & Hawkins, Michigan Court Rules Annotated (1979 Pocket Part), p 21.

This interpretation ignores the broad jurisdictional grant of Const 1963, art 6, § 13:

"The circuit court shall have original jurisdiction in all matters not prohibited by law."

There is a presumption of jurisdiction absent specific exclusions provided by law. See MCL 600.601; MSA 27A.601, Practice Commentary, 32 MCLA 250, *Lester v Sheriff of Oakland County, supra.* Such prohibitions provided by law are the product of the Legislature. To the extent GCR 1963, 714.1(1) is in direct conflict with the jurisdictional provisions of the Revised Judicature Act, MCL 600.101 *et seq.;* MSA 27A.101 *et seq.,* we conclude

---

[4] "All actions for mandamus against a state officer shall be brought in the Court of Appeals."

that the latter are controlling. The particular section was amended subsequent to the promulgation of the court rules, so we presume that the Legislature was fully aware of the language of GCR 1963, 714.1(1) and consciously sought to alter its impact. Therefore, the mandate of MCL 600.4401; MSA 27A.4401, must take precedence over GCR 1963, 714.1(1). The lower court erred in ruling that mandamus jurisdiction was lacking.

Defendants now argue that even if subject matter jurisdiction existed, accelerated judgment was proper as to the school district and the individual plaintiffs as school board members. Defendants contend that these plaintiffs, as agents of the state, lack standing to attack a state statute as being violative of the state constitution. We disagree. Defendants rely on *Lansing School Dist v State Board of Education,* 367 Mich 591; 116 NW2d 866 (1962). There, the plaintiff school district alleged that it was denied equal protection when it was forced to absorb a neighboring school district without voter approval. The Supreme Court's holding that the plaintiff, as an agency of the state, was in no position to attack its parent is consistent with those cases precluding Federal constitutional interference with a state's internal political organization. See, *e.g., Trustees of Dartmouth College v Woodward,* 17 US (4 Wheat) 518; 4 L Ed 629 (1819), *Hunter v Pittsburgh,* 207 US 161; 28 S Ct 40; 52 L Ed 151 (1907), *City of Trenton v New Jersey,* 262 US 182; 43 S Ct 534; 67 L Ed 937 (1923). However, the present litigation concerns itself with the enforcement of the fiscal mandates of the state constitution, a decidedly different issue. Additionally, the plaintiff in *Lansing School Dist, supra,* was not a real party in interest. The Court specifically noted that the issue of voter

approval of school district consolidation was a question between the voters themselves and the state government. 367 Mich 591, 600. Hence, the school district had no real stake in the determination of that issue.

As noted above, standing refers to the existence of a party's interest in the outcome of a litigation, a prerequisite imposed to assure vigorous advocacy. *Michigan License Beverage Ass'n v Behnan Hall, Inc, supra.* We perceive sufficient party interest in this case to assure such advocacy.

This suit was instigated because of the belief that the Waterford School District is being directly deprived of state funds in violation of the Headlee Amendment. To the extent that those funds are necessary to the district to fulfill its responsibilities, the district has an interest in the outcome of this litigation. Likewise, the school board members are under a statutory duty to "[d]o anything * * * which is necessary for the proper establishment, maintenance, management, and carrying on of the public schools of the district". MCL 380.246(f); MSA 15.4246(f). This includes a responsibility to seek payment of the additional state funds that the district has allegedly been denied. The interests and responsibilities of the plaintiff school district and the board members place them in direct conflict with the State Board of Education and State Treasurer. This conflict assures that the respective positions of the parties will be presented in a truly adversary context.

Reversed and remanded.